UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VIRGIL GREEN,

                     Petitioner,               Case Number 2:06-cv-15377

v.                                       HON. DENISE PAGE HOOD

DUNCAN MACLAREN,

                     Respondent.
_____/


**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS**


       Virgil Green, ("Petitioner"), presently confined at the Kinross Correctional Facility, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Wayne Circuit Court jury trial conviction for armed robbery. MICH. COMP. LAWS §257.529. Petitioner claims that: 1) insufficient evidence was presented at trial to support his conviction, 2) the trial court's ruling to disregard part of his counsel's closing argument violated Petitioner's right to present a defense, 3) the trial court erroneously refused to provide the jury with trial transcripts during deliberations, and 4) Petitioner was denied the effective assistance of counsel. The Court will deny the petition because his claims are without merit.

I.

This case involves the robbery of a Detroit area pharmacy. Two men were arrested at the scene. The primary question at trial was whether Petitioner aided and abetted the other man in the robbery, or whether he unwittingly accompanied him to the pharmacy.

At the defendants' joint trial, David Moore testified that he was working at a car wash on the morning of April 24, 2003, when he saw a vehicle park next to the vacuums. Moore identified Petitioner as the driver of the vehicle. Moore then saw another man, who he later identified as co-defendant Demetrius McBride, cross the street and get into the vehicle. Moore thought something about the two men seemed suspicious. The car remained for a short time and then drove away. About an hour later, Moore saw police cars by a pharmacy in the area where car had driven. Moore went to tell to the police about his observations.

Ryan West testified that he was working at the pharmacy with three other employees at the time of the incident. The employees were in the process of opening the pharmacy for business. West was working alone at the front register. Petitioner and McBride entered the pharmacy. Petitioner repeatedly engaged West and asked him about the location of items.

While Petitioner was in one of the aisles, one of West's co-workers, Patricia

2

Root, approached West and told him that she thought that they were being robbed because the two other employees had gone into the office area with the other man who entered. Root called the police.

Petitioner returned to the register, made a small purchase, and then walked to the back of the store. Petitioner shouted, "Come on; let's go." Petitioner then approached the register again. After a few minutes, McBride walked from the back of the store toward the front door. Police officers were waiting outside. McBride stopped, turned around, and asked, "Who called the police?" He then pulled a gun and pointed it at West and Root. Petitioner said, "Oh, no man. What are you doing?" And then he left through the front door. McBride fled through the back door. West identified Petitioner and McBride in the photographs taken from the store's surveillance cameras. William Garrison testified that he was the assistant manager of the pharmacy. As he was getting the register trays from the safe as part of the opening process, he was paged by the pharmacist. He went to her area and saw two men, Petitioner and McBride. Petitioner asked Garrison where the pop was located. Garrison then went to talk to the pharmacist, and he saw that McBride was coming toward him with a gun pointed at him. Petitioner was approximately 10 feet from Garrison and McBride when this occurred. Garrison then began to move toward the office with McBride. Garrison opened the safe at the direction of McBride, and

3

McBride took a canvas bag which he filled with money from the safe.

Timothy Zawacki testified that he was a Dearborn Heights police officer, and he responded to the robbery. Zawacki arrested Petitioner as he left the store. Petitioner was holding a two-way radio when he was arrested. Patty Root then came outside and said that another man who robbed the store left through the back door. Zawacki went to the back of the store and looked down the alley and saw McBride begin to run down the alley. Zawacki pursued McBride and arrested him hiding under a boat in a backyard. McBride had $360.00.

Based on this evidence the jury convicted Petitioner of armed robbery and he was sentenced as a fourth time habitual felony offender to 23 years and 9 months-to-50 years in prison.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the following claims:

I. There was insufficient evidence as a matter of law to establish Appellant Virgil
Green's conviction for armed robbery as required by the due process clause.

II. Appellant Virgil Green's conviction for armed robbery should be vacated since
the guilty verdict was against the great weight of the evidence.

III. The trial court committed reversible error by foreclosing any possibility of having testimony reread and denied Appellant Virgil Green of a fair trial in violation of both state and federal constitutions.

4

IV. Appellant Virgil Green was denied a fair trial and impartial jury where the prosecutor's inappropriate behavior during the trial offended the majority of the jurors and this misconduct was discussed in the jury room before the verdict was rendered in violation of due process of law. And the trial court abused his discretion when he failed to sua sponte order a mistrial.

V. The Prosecutor's pervasive misconduct throughout the trial violated Appellant Virgil Green's right to due process of law and a fair trial as guaranteed by both the federal and state constitutions.

VI. Appellant Virgil Green was denied his constitutional right to effective assistance of counsel, therefore, he is entitled to a new trial and/or hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973).

VII. The cumulative effect of the foregoing errors denied Appellant Virgil Green of a fair trial in violation of due process of law and requires reversal.

VIII. Appellant Virgil Green is entitled to resentencing because the sentencing judge increased the statutory sentencing guideline range in his case based on facts which were not proven to a jury beyond a reasonable doubt in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner also filed a pro se supplemental brief, raising the following two additional claims:

IX. The trial court committed reversible error when ruling, during defense counsel's closing argument, and in response to the prosecutor's objection, for jurors to disregard evidence elicited by a witness on direct examination in violation of the state and federal constitution.

X. Appellant Virgil Green was denied the effective assistance of counsel guaranteed him by the federal and state constitution at trial when counsel failed to object or recognize trial court error in ruling on the wrong issue which effected the outcome of the trial. Therefore, he is entitled to a new

5

trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Green*, No. 252045 (Mich. App. Aug. 16, 2005). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same ten claims. The Michigan Supreme Court denied the application in a standard order. *People v. Green*, Mich. Sup. Ct. No. 129587 (Mich. Dec. 27, 2005).

The present case was filed on December 4, 2006. Petitioner's initial filing raised six claims. Respondent filed a motion to dismiss the petition on the grounds that two of his claims were not exhausted. The Court granted the motion and dismissed he petition. The case was listed as closed by the Court's CM/ECF system. Petitioner filed a motion for relief from judgment, seeking to amend his petition to the four exhausted claims outlined above. The Court granted the motion on August 2, 2010. ECF 32. Nevertheless, the case erroneously remained listed as closed on CM/ECF. The error came to light when Petitioner filed a series of motions in December of 2014. ECF Nos. 44, 45, and 46. The case has been reassigned and is now ready for decision.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this

case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because the petitioner filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

7

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than de novo review. The AEDPA imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster,* ___ U.S. ___, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).

A.

8

Petitioner's first claim asserts that there was insufficient evidence presented at trial to sustain his conviction for armed robbery.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction  except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Pursuant to Supreme Court precedent, evidence adduced at trial is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. "*Jackson* leaves [fact-finders] broad discretion in deciding what inferences to draw from the evidence presented at trial . . . . This deferential standard does not permit . . . fine-grained factual parsing." *Coleman v. Johnson*, ___ U.S. ___, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012) (citations and internal quotation marks omitted). Indeed, "[i]t is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony[,]" not that of a reviewing court. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

9

Because Petitioner's sufficiency of the evidence challenge was adjudicated on the merits by the Michigan Court of Appeals, this Court must view the state court's determination through the lens of 28 U.S.C. § 2254(d)(1). As framed by AEDPA, the issue is whether the Michigan Court of Appeals unreasonably applied Jackson to the facts of Petitioner's case. "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was "objectively unreasonable."'" *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1 (2011) (per curiam)). This standard "commands deference at two levels . . . first, to the [factfinder's] verdict as contemplated by Jackson, and, second, to the state court's consideration of the [fact-finder's] verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); see also *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) ("Two layers of deference apply to habeas claims challenging evidentiary sufficiency.") (citation omitted).

Petitioner contends that there was insufficient evidence to establish that he aided and abetted McBride in the commission of the offense. To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must prove beyond a reasonable doubt that:

> 1. the crime charged was committed by the defendant or some other person;

10

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007)

The evidence viewed most favorably to the prosecution allowed the jury to find that Petitioner and McBride went to the pharmacy together. Moore saw them leave in a car together, and the employees at the store saw them interact while at the pharmacy. The testimony indicated that while McBride went to the back of the store to force the manager to open the safe, Petitioner stayed towards the front of the store and engaged the employee standing at the register. Petitioner's defense was that he innocently accompanied McBride to the store and was surprised to find that he was robbing it. This version is supported by Petitioner's statement, "Oh, no man. What are you doing?" upon seeing McBride pull out a gun after police arrived. He asserts that the evidence presented at trial did not overcome this theory of innocence beyond a reasonable doubt.

There is no question that Petitioner has presented an innocent explanation for the evidence. However, in weighing the legal sufficiency of the evidence, "the Supreme Court has given little weight to a defendant's innocent explanation of the evidence," and "it is well settled that when a defendant 'offer[s] an innocent

11

explanation for the incriminating facts proved by the government, the jury is free to disbelieve [it].'" *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007) (quoting *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir. 2003)).

The evidence, viewed most favorably to the prosecution, allowed a reasonable fact-finder to determine beyond a reasonable doubt that Petitioner aided McBride in the robbery by acting as the look-out at the front of the store. This theory is supported by the evidence that Petitioner initially accompanied McBride to the back of the store and was standing a short distance away when McBride initially drew his gun. The evidence also indicated that Petitioner repeatedly engaged the cashier, and after a second employee came to the front of the store, Petitioner went towards that back and yelled at McBride that it was time to go.  In light of the evidence adduced at trial, the Michigan Court of Appeals' determination that the evidence was sufficient to support Petitioner's conviction under an aiding and abetting theory was not an objectively unreasonable application of *Jackson*.

### B.

Petitioner's second claim argues that the trial court erred in sustaining the prosecutor's objection to defense counsel's statement during closing argument that Petitioner was surprised when he saw McBride pull a gun when the police arrived. The effect of the instruction was to exclude from the jury's consideration Petitioner's

statement of surprise. The state court found that the trial court erred in sustaining the objection, but it found that the error was harmless.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id*. at 690-691 (1984) (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

During closing argument, defense counsel stated that West testified he heard Petitioner say "what are you doing?" when McBride pulled out his gun at the front of

the store when he saw police had arrived. T 9-29-2003, at 124. The prosecutor objected to the statement on the grounds that he had successfully objected to the testimony as inadmissible hearsay. Defense counsel countered that the testimony had been admitted under the present sense impression exception. A bench conference was held, and the trial court agreed with the prosecutor's recollection. The court directed the jury to disregard the comment.

The Michigan Court of Appeals correctly noted that the testimony was, in fact, properly admitted by the trial court when the statement was elicited by the prosecutor during direct examination of West. The state court went on to hold that although it was error to direct the jury to disregard the statement, the error was harmless.

The erroneous instruction directing the jury to disregard West's testimony implicated Petitioner's right to present a defense. Petitioner's defense was that he did not participate in the robbery. Petitioner asserts that this theory was strengthened by West's testimony that Petitioner expressed surprise and left the store when McBride pulled a gun. The trial testimony indicates that West testified that when McBride came to the front of the store he saw the police had arrived. He then pulled out his gun pointed it at the two employees in the front of the store and asked which one had called the police. Petitioner reacted by saying, "ah, no, man, what are you doing?" See T 9-24-2003, at 52-55.

14

Errors implicating a defendant's right to present a defense are subject to harmless-error analysis. See *Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th Cir. 2009) On direct review, such an error may be excused only if it "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). On federal habeas review, Petitioner may obtain relief only if his asserted error had a "substantial and injurious effect" on the jury's verdict. *Id*. at 121 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)); see also *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) ("*Brecht* is always the test, and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman* under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict.").

The Court finds that the exclusion of the testimony did not have a substantial and injurious effect on the jury's verdict. The evidence of Petitioner's guilt was strong. The evidence showed that Petitioner and McBride were together when they entered the store. Once in the store, both men proceeded to the back where Petitioner was close enough to McBride to be aware that he pulled his gun on the employees at the rear of the store and directed them to the back. From that point, the evidence showed that Petitioner proceeded to the front of the store to occupy the cashier. When a second employee came to the front, Petitioner went again to the back to inform McBride that it was time to leave. These actions very strongly suggest that Petitioner

15

was acting as McBride's look-out.

Turning to the testimony that was effectively excluded by the prosecutor's objection, the statement "ah, no, man, what are you doing?" can be viewed two ways. Petitioner argues that it indicates he was surprised and shows McBride acted alone. Taken with the evidence that Petitioner already knew McBride was robbing the pharmacy and was acting as look-out, however, the statement can be read as indicating that Petitioner was annoyed or angered by McBride's threats because the police had already arrived and the robbery had therefore failed. Given the otherwise strong evidence of Petitioner's guilt and the value of the excluded evidence, the Court finds that any error did not have a substantial influence on the outcome of the trial.

## C.

Petitioner's third claim alleges that the trial court erred when it refused to provide the jury with a trial transcript for use in its deliberations. The claim fails because it cannot be supported by clearly established Supreme Court law. "There is no recognized constitutional right to the production of trial transcripts to the jury." *United States v. Sain*, 387 F. App'x 558, 560 (6th Cir. 2010). Therefore, this claim does not provide a cognizable basis for granting habeas relief.

## D.

Petitioner's final claim consists of a number of allegations of ineffective

16

assistance of counsel. Specifically, Petitioner claims that his counsel: 1) failed to move to sever his trial from McBride's, 2) failed to challenge the legality of Petitioner's arrest, 3) failed to call defense witnesses, 4) failed to ask for a live line-up, 5) failed to object to the admission of photographs, 6) failed to allow Petitioner to testify in his own defense, and 7) failed to adequately respond to the prosecutor's objection in closing argument discussed above. None of the allegations have merit.

To demonstrate that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under *Strickland*. Stated differently, the level of scrutiny is the same as would be applied on direct review. See *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).

These allegations were raised in Petitioner's direct appeal in his pro se supplemental brief. The Michigan Court of Appeals summarily denied the claim on the merits without separately discussing each allegation. This form of adjudication does not alter the deference owed to the state court decision. See *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (in applying § 2254(d)(1), "we are determining the reasonableness of the state courts' 'decision,' not grading their papers.").

Petitioner first asserts that his counsel was ineffective for failing to move for severance of his trial from McBride's. "[U]nder Michigan law, severance is required

only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing Mich. Ct. R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id*. (quoting *People v. Etheridge*, 196 Mich. App. 43, 492 N.W.2d 490, 495 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 524 N.W.2d 682, 689-90 (1994). Petitioner has failed to identify a specific trial right that was put at risk by the joint trial. Nor has he demonstrated that the jury was prevented from making a reliable judgment. Counsel was not ineffective for failing to make a meritless motion to sever.

Petitioner next asserts that his counsel was ineffective for failing to challenge the legality of his arrest. Petitioner has not provided a reasonable basis for challenging his arrest. An officer has authority to arrest a person without a warrant when the officer has probable cause to believe that that person has committed an offense in the officer's presence. See *Virginia v. Moore*, 553 U.S. 164, 178 (2008). The police were called to the scene regarding a robbery in progress, and when they arrived they arrested Petitioner because he matched the description of one of the perpetrators. As

19

the officers had probable cause to effectuate a warrantless arrest, the Fourth Amendment allowed a complete search of petitioner's person incident to the arrest. See *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Petitioner next asserts that his counsel should have called his sister and fiancee as witnesses to testify that they had dropped Petitioner off in the area to look for a job. To establish prejudice from counsel's failure to investigate or call potential witnesses, a petitioner must show that the witnesses would have testified and that the witnesses' testimony would probably have changed the outcome of the trial. *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996). Petitioner supports this allegation with affidavits from the witnesses, but those affidavits were never properly made part of the state record and considered by the state courts. Therefore, the Court may not consider them in deciding whether the state court reasonably adjudicated this claim. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). The proposed testimony of these witnesses, which is somewhat impeaching of Moore's testimony, would not have undermined the strongly incriminating testimony of the employees. There is not a reasonable probability that the result of Petitioner's trial would have been different had these witnesses been called.

Petitioner argues that his counsel should have requested a live lineup identification procedure with respect to Moore. Under Michigan law, a trial court has

20

discretion to grant a defendant's request for a line-up, but a defendant is not entitled to such a line-up as a matter of right. *People v. Buchanan*, 107 Mich. App. 648, 309 N.W.2d 691, 693 (1981). Petitioner has not demonstrated any likelihood that the eyewitnesses would not have been able to identify him in such a procedure. The importance of Moore's testimony was overshadowed by the testimony of the pharmacy employees indicating that the two men were together at the store. His claim that defense counsel's failure to request a lineup was ineffective assistance of counsel is only speculation that it would have benefitted his defense.

Petitioner asserts that his counsel performed deficiently by failing to challenge the admission of photographs taken from the pharmacy security cameras. Petitioner states no basis for such an objection other than the accompanying descriptive testimony "was deliberately slanted to portray Mr. Green as an aider and abettor." ECF 28-2, Pg ID 2132. Petitioner has failed to allege a valid basis for an objection, nor has he demonstrated that his counsel was ineffective for failing to make a challenge.

Petitioner next asserts that his counsel made the decision not to have him testify. It is well-established that a criminal defendant has a constitutional right to testify in his own behalf. See *Rock v. Arkansas*, 483 U.S. 44, 52-53 (1987). "The right to testify is personal to the defendant, may be relinquished only by the defendant, and

the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F.3d 545, 550-551 (6th Cir. 2000). The role of counsel is to advise the defendant whether he or she should take the stand but the final decision is ultimately up to the defendant. *Id*. at 551. "[I]f the defendant wants to testify, he [or she] can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." *Id*. Waiver of the right to testify may be presumed when a defendant fails to alert the trial court of her disagreement with counsel's advice. *Id*. Here, Petitioner does not allege that he alerted the trial court that he wished to testify, and the record indicates that he expressly waived his right to testify. ECF 17-7, p. 44.  Petitioner's claim that his counsel should have called him as a witness is defeated by his own decision to waive his right to testify.

Finally, Petitioner asserts that his attorney was ineffective for the manner he handled the prosecutor's objection during closing argument discussed above. The record shows that counsel responded to the prosecutor's objection, but the objection was sustained.  As indicted above, the error was harmless.

Accordingly, Petitioner has failed to demonstrate entitlement to relief based on his ineffective assistance of counsel claim.

### III.

Accordingly, it is **ORDERED** that the amended petition for a writ of habeas

22

corpus [dkts # 26 and 28] is **DENIED** and **DISMISSED**.

                S/Denise Page Hood
                Denise Page Hood
                United States District Judge

Dated:  April 14, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2015, by electronic and/or ordinary mail.

                S/LaShawn R. Saulsberry
                Case Manager

23